# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| LOGAN MEYER, CHRISTILYNN MEYER, and THOMAS MEYER,<br><br>       Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC,<br><br>       Defendant. | Case No. 18-CV-916-JPS<br><br><br>**ORDER** |

On June 18, 2018, Thomas Meyer ("Thomas"), his wife Christilynn Meyer ("Christilynn"), and their son Logan Meyer ("Logan") (collectively, "Plaintiffs") filed this diversity action against Navient Solutions, LLC ("Navient"), claiming violations of the Wisconsin Consumer Protection Act. (Docket #1). On March 1, 2019, Navient filed a motion for summary judgment, which is now fully briefed.[1] (Docket #25). For the reasons

---

[1] On February 20, 2019, Navient filed an expedited non-dispositive motion for extension of time of the dispositive motion deadline, which the Court had set for March 1, 2019. (Docket #20). Civil Local Rule 7(h)(2) allows respondents seven days to oppose expedited motions. The Court waited seven days to allow Plaintiffs to oppose. On March 1, 2019, before the Court could issue its order, Navient complied with the pre-existing dispositive motion deadline. (Docket #25). Therefore, Navient's expedited non-dispositive motion (Docket #20) is moot, and will be denied accordingly.

  Meanwhile, on February 21, 2019, Plaintiffs filed a motion for a protective order, seeking to quash a notice of deposition set for Monday, February 25, 2019. (Docket #22). This deposition date was offered by Navient in the event the Court denied their expedited motion for an extension of time. (Docket #20 at 2–3). Navient had twenty-one days to respond to the motion. Civ. L.R. 7(b). Navient did not oppose the motion by March 14, 2019, but by that time, the issue was already moot. Therefore, Plaintiffs' motion also will be denied accordingly.

explained below, Navient's motion will be granted in part and denied in part.

1.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The Court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the [C]ourt that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

2.   **RELEVANT FACTS**

On September 12, 2013, Thomas executed a Federal Direct Parent PLUS Loan Application and Promissory Note worth $4,000.00 so that his son, Trevor, could attend college. The loan was disbursed in $2,000.00 increments on September 23, 2013 and January 14, 2014. The following year, Thomas executed the same type of loan so that his other son, Logan, could

attend college. This time the loan was for $13,260.000, which was disbursed in $6,655.00 and $6,605.00 increments on September 24, 2014 and February 9, 2015. The interest rate for both loans is 7.9%. Any unpaid interest that the loans accrue is capitalized, which means that any unpaid interest on each loan is added to the principal. If the interest is not paid, the loans grow in size, with correspondingly higher interest rates. These loans, though governmental, are serviced by a private company called "Navient."

The repayment period of the loans began on the day of the final disbursement for each loan. In other words, Trevor's loan became repayable on January 14, 2014, and Logan's loan became repayable on February 9, 2015. Loan payments could be deferred while the student was enrolled at least part-time in an eligible school, but such deferment was discretionary. Navient receives information regarding students' enrollment status from the National Student Loan Database System ("NSLDS"). On January 7, 2014, Navient received a report from the NSLDS indicating that Trevor was enrolled full-time. Thereafter, Navient received regular reports from NSLDS indicating the students' enrollment. As the signatory parent, Thomas was required to pay the interest on the loans even if the loans were in deferment.

The parties dispute whether the loans would be automatically deferred while the students were appropriately enrolled in eligible schools. The loan document states that,

> you may receive a deferment while you are enrolled in school on at least a half-time basis. . .if (1) you submit a deferment request form to your servicer along with documentation of your eligibility for the deferment, or (2) your servicer receives information from the school you are attending that indicates you are

enrolled at least half time. *If your servicer processes a deferment based on information received from your school, you will be notified of the deferment* and will have the option of canceling the deferment and continuing to make payments on your loan. (emphasis added).

Plaintiffs did not request a deferment or receive a notification that the loans were deferred. Nevertheless, based on this language, they believed the deferment was automatic.

Direct PLUS Loans taken out by parents are governed by 34 C.F.R. § 685.204(c)(2), which states that loans are eligible for deferral under the following circumstances:

> (i) *Upon the request of the borrower*, during the period when the student on whose behalf the loan was obtained is enrolled at an eligible institution on at least a half-time basis; and
> (ii) *Upon the request of the borrower*, during the six-month period that begins on the later of the day after the student on whose behalf the loan was obtained ceases to be enrolled on at least a half-time basis or, if the parent borrower is also a student, the day after the parent borrower ceases to be enrolled on at least a half-time basis. (emphasis added).

Based on these regulations, Navient submits that Thomas, as the borrower, needed to request a deferment. The parties dispute whether Navient knew that Trevor and Logan were enrolled full-time in eligible schools. In any case, Thomas did not make payments on the repayment due date that began in 2014 because he believed that the loans were automatically deferred.

From April 2014 to November 2016, Navient made approximately 105 calls to the Plaintiffs regarding the status of the loans, including at least

one on Christmas Eve. On December 27, 2014, Navient contacted Thomas and informed him that payment on the loans was past-due. Thomas explained that the students were both in school, but Navient informed Thomas that it did not have the enrollment information necessary to defer the loans. Navient sent Thomas a deferment form. However, the address was incorrect, and Thomas never received the letter.

On May 27, 2015, Thomas' wife, Christilynn, called Navient in order to inquire about the deferred status of the loans. She was told that the students' schools needed to complete a deferment form, which Navient sent to Christilynn using the same address used in December 2014. Again, Plaintiffs did not receive the form. On August 31, 2015, Thomas contacted Navient about the deferments. Navient attempted, a third time, to send Thomas a deferment form, but they sent it to the same incorrect address, and Plaintiffs never received the letter. Accordingly, nobody ever returned a deferment form to Navient regarding either of the two loans.

The deferment criteria and forms are also available online. The deferral form requires the signatory parent to complete one section, and an authorized school official to complete another section. The website also states that a person must request a deferment, or else they would be expected to begin making payments immediately after the loan was disbursed. Signatories have the ability to make payments on loans by website, phone, or mail.

In 2017, Navient also contacted Plaintiffs several times. In August 2017, Navient spoke with Thomas and Logan three times regarding the loans and the bank account information on file. On October 5, 2017, Navient received a call from Thomas and, on October 23, 2017, successfully left voicemails for Trevor and Logan. Nevertheless, ostensibly in an attempt to

reach Thomas, on October 25, 2017 Navient also sent letters to Gerald Marble and Daniel Meyer, Thomas' relatives who are listed as references on the loan application. The letters stated that Navient was trying to contact Thomas in connection with a student loan. The letters requested updated contact information, but did not mention that the loans were delinquent.

As a result of Navient's collection practices, Plaintiffs state that at least one credit card was not renewed, and the parties were embarrassed, distressed, and anxious about the effect that this will have on their finances and their prospects for the future.

**3. ANALYSIS**

**3.1 Wis. Stat. § 427.104(1)(e)** [2]

Under Wisconsin law, lenders are prohibited from "disclos[ing] to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information." Wis. Stat. § 427.104(1)(e). At least one court has held that "the fact that one has taken out student loans from the government (and thus has to deal with a loan servicer) is not a stain on one's reputation." *Weber v. Great Lakes Educ. Loan Serv's, Inc.*, 2013

---

[2]Plaintiffs withdrew their claims related to credit worthiness, which results in dismissal of the violation of Wis. Stat. § 427.104(1)(c), which prevents debt collectors from disclosing "information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false." (Docket #29 at 19 n.6). Confusingly, Plaintiffs still argue that the letters sent to Thomas' parents violated Wis. Stat. § 427.104(1)(c) because they falsely claimed that Navient could not reach Thomas in connection with a student loan. (Docket #29 at 10–11). However, it is not evident that a simple request for contact information would adversely affect a customer's reputation for credit worthiness, nor have Plaintiffs offered any evidence that this is the case. Therefore, in either situation, the claim arising under Wis. Stat. § 427.104(1)(c) is dismissed.

WL 3943507, at *5 (W.D. Wis. July 30, 2013) (finding no violation of subsection 427.104(1)(e) where loan servicers informed the plaintiff's mother that he had an account with them and requested his contact information).

The letters that Navient sent to Thomas' relatives divulged that Thomas had taken out a student loan and stated that Navient needed Thomas' most up-to-date contact information so that he did not miss out on "important updates." Nothing in the letters suggests that Thomas had missed a loan payment, was in default, or in any other way divulges information about Thomas' commitment to the loan. In short, they did not contain any information that would be damaging to a person's reputation. Plaintiffs invite the Court to speculate that the letters imply financial difficulty. However, there is no evidence by which a reasonable jury could find that the letters amounted to a violation of Section 427.104(1)(e).[3] Accordingly, the claim regarding this violation is dismissed.

### 3.2 Wis. Stat. § 427.104(1)(g)

Wis. Stat. § 427.104(1)(g) bars a debt collector from "comminucat[ing] with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer." Any action must be brought "within one year after the date of the last violation. . .two years after consummation of the agreement[,] or one year after last payment, whichever is later." Wis. Stat. § 425.307.

---

[3] Because the claims for violations of Wis. Stat. § 427.104(1)(c) and (e) will each be dismissed for want of evidence, they are necessarily dismissed as to Christilynn and Logan as well. Therefore, the Court declines to assess their standing as "customers" under these subsections.

A flurry of calls occurred in 2014-2016, but the Plaintiffs also received calls and voicemails in late 2017, and letters were sent to Thomas' relatives in late 2017. This action was filed in June 2018. The question then becomes, do Plaintiffs' claims concerning the calls in 2014-2016 relate to the calls and letters that they received in 2017? There is little authority to assist in this determination, but it appears that violations outside the statute of limitations may be actionable if they are part of a continuation of violations that occurred within the statute of limitations. *See Hopkins v. Capital One Bank, USA, N.A.*, 2015 WL 327631, at *5–6 (W.D. Wis. Jan. 26, 2015) (discussing Wis. Stat. § 428.106(4), which contained "the same rule" as Wis. Stat. § 425.307(1), and finding that the statute "appears to recognize a continuous violation by allowing a claim based on the date of the last violation in the continuum.") (citations and quotations omitted); *McDonough v. WESTconsin Credit Union*, 2015 WL 1326413, at *1 (W.D. Wis. Mar. 25, 2015) (rejecting the continuing violation doctrine where there was only one action with continuing consequences that occurred outside of the limitations period); *McAdams v. Wheaton Franciscan Med. Group*, 2014 WL 2589963, at *3 (E.D. Wis. June 10, 2014) (declining to apply the continuing violation doctrine in an FDCPA case where none of the acts giving rise to the violation occurred in the limitations period).

By contrast, in this situation, Navient made a series of harassing communications in 2014-2016, and continued to make harassing communications in 2017. It is undisputed that all communications pertained to Navient's attempts to collect payment on the Direct PLUS loans that Thomas took out on behalf of his sons. Therefore, the acts that occurred in 2017 can be seen as part of a continuum of harassing communications. For the purpose of Section 427.104(1)(g), the statute of

limitations would begin to run on the date of the last arguably threatening or harassing communication. This appears to have been in October 2017, when Navient sent letters to Thomas' relatives just two days after leaving voicemails for Trevor and Logan. Accordingly, the statute of limitations does not bar this claim.

Navient also argues that there is no violation as to Christilynn or Logan because its phone calls were directed "solely" at Thomas. However, there is evidence in the record that Navient attempted to contact (and leave voicemails for) Logan, that Navient called the family more than once on Christmas Eve, and that Navient called the home phone and spoke with Christilynn. A reasonable jury could find, based on the dates and times of the phone calls, as well as the numbers dialed, that Navient directed their calls to Christilynn and Logan as well as Thomas. Additionally, it is a question for the jury whether these calls and letters were harassment at all—taking into account the lapses of time in their delivery. *See Weber*, 2013 WL 3943507, at *5 ("Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury") (citing *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985)).

### 3.3  Wis. Stat. § 427.104(1)(j)

Debt collectors are prohibited from "claim[ing] or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." Wis. Stat. § 427.104(1)(j). This subsection is also governed by Wis. Stat. § 425.307, which provides that actions must be brought "within one year after the date of the last violation. . .two years after consummation of the agreement[,] or one year after last payment, whichever is later." Violations that pre-date the commencement of the statute of limitations period are barred. *Kirk v. Credit Acceptance Corp.*, 829

N.W.2d 522, 528 (Wis. Ct. App. 2013) (treating a deficiency action, which started the statute of limitations, as a separate violation from other claims for the purpose of deeming the claims timely). However, as discussed above, certain violations outside of the statute of limitations might be actionable if they are part of a continuum that includes actionable conduct that occurred within the statutory period. *See Hopkins*, 2015 WL 327631, at *5–6; *McDonough*, 2015 WL 1326413, at *1; *McAdams*, 2014 WL 2589963, at *3.

Navient argues that the violation of Wis. Stat. § 425.307, which prohibits debt collectors from attempting to enforce a right that they know or have reason to know does not exist, is barred by the statute of limitations because Plaintiffs alleged in their complaint that "in 2015, Navient stopped demanding payments and falsely asserting that [the children] were not in school." (Docket #1 ¶ 12). Accordingly, they contend, Plaintiffs should have filed a complaint by December 31, 2015.

Plaintiffs argue that the statute of limitations does not apply because they have been paying their loans, therefore their "last" payment occurred within the past year. However, Plaintiffs do not cite to any evidence in the record in support of their argument. They also argue, vaguely, that the statute of limitations does not apply because the violations in 2014 were continuing violations that relate to the letters in 2017. (Docket #29 at 12–13) (discussing the harassing phone calls but not the assertion of a right that did not exist). This is an extremely close call. Based on Plaintiffs' failure to adequately argue or offer evidence to the contrary, the Court is inclined to find that the statute of limitations bars this claim.

However, even if the Court had found that the statute of limitations did not bar the claim, the claim must be dismissed in light of 34 C.F.R. §

685.204. The regulation explicitly provides that parent borrowers of Direct PLUS Loans are eligible for deferment in two situations, each of which is contingent "*upon the request of the borrower.*" 34 C.F.R. § 685.204(c)(2)(i),(ii). Thomas never submitted the forms needed to request a loan deferral. In light of this, there is no basis by which a reasonable jury could find that Navient knew or should have known it had no right to payment from Thomas while his sons were in school. Accordingly, this claim is dismissed.

### 3.4    **Wis. Stat. § 421.108**

Wis. Stat. § 421.108 "imposes an obligation of good faith in its performance or enforcement" of various loan agreements. In light of the foregoing potential violation of Wis. Stat. § 427.104(1)(g), a reasonable jury could also find that Navient failed to act in good faith in its attempts to contact the Plaintiffs regarding the status of the loans.

Plaintiffs failed to address Navient's arguments to dismiss the claims regarding improper interest accrual and the income-based repayment plan. Therefore, those arguments are deemed waived and the claims are dismissed.

### 4.    **CONCLUSION**

For the reasons stated above, the Court will grant Navient's motion for summary judgment as to the violations of Wis. Stat. § 427.104(1)(c), (e), (j). However, it will deny the motion for summary judgment as to the violation of Wis. Stat. §§ 427.104(1)(g), 421.108 because the issues of whether Navient's communications with the Plaintiffs amounted to harassment, and whether this amounted to a breach of the duty to act in good faith, are best left for the jury.

Accordingly,

**IT IS ORDERED** that Navient's expedited motion for an extension of the dispositive motion deadline (Docket #20) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiffs' motion for a protective order (Docket #22) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Navient's motion for summary judgment (Docket #25) be and the same is hereby **GRANTED in part and DENIED in part**; and

**IT IS FURTHER ORDERED** that Plaintiffs' claims predicated on violations of Wis. Stat. § 427.104(1)(c), (e), (j), and any claims arising from Navient's interest accrual or income-based repayment plan, be and the same are hereby **DISMISSED**.

Dated at Milwaukee, Wisconsin, this 30th day of May, 2019.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge